

FILED

JUN 2 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE
COMMISSION,
100 F STREET, N.E.
WASHINGTON, D.C. 20549

    Plaintiff,

v.

WENDY FELDMAN PURNER,
517 BONHILL ROAD
LOS ANGELES, CA 90049-2325

    Defendant.

**COMPLAINT**

CASE NUMBER  1:06CV01148

JUDGE: Paul L. Friedman

DECK TYPE: General Civil

DATE STAMP: 06/23/2006

Plaintiff, Securities and Exchange Commission (the "Commission"), alleges:

## SUMMARY

1. During the period from July 1998 through late 2001, Wendy Feldman Purner ("Purner"), a former registered representative, breached the trust of her brokerage customers ("customers") and investment advisory clients ("clients") and engaged in fraud when she misappropriated $4,145,000 from her customers and clients at a broker-dealer and investment adviser registered with the Commission ("Broker II") and while associated with her own unregistered investment advisory firm, San Diego Asset Management, Inc. ("SDAM"). Purner primarily used the money that she misappropriated from certain customers and clients to create the appearance of profitable returns in other investor accounts on funds entrusted to her even though she did not invest their money. Purner also spent some of the misappropriated funds on herself and her then-husband, including Las Vegas vacations and gambling.

1

2. While associated with Broker II and SDAM, Purner received money from her customers and clients to invest and manage. Purner told her customers and clients that she would invest their money in various investment vehicles, including commercial paper, investment partnerships, and common stock. Purner did not, however, invest her customers' and clients' money but rather misappropriated it or used it to conceal her withdrawals from the accounts of other customers and clients.

3. Purner concealed her fraud at Broker II by creating and mailing to her customers false account statements that described non-existent investments and contained inflated account balances. At SDAM, Purner hid her fraud from her clients by making materially false oral representations to her clients regarding the nature and value of their investments.

4. By engaging in such conduct, Purner violated Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 (the "Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

5. The Commission brings this action seeking (a) an injunction prohibiting future violations of each of these provisions; (b) disgorgement of Purner's ill-gotten gains plus prejudgment interest; and (c) civil money penalties pursuant to Section 20(d)(1) of the Securities Act [15 U.S.C. § 77t(d)(1)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e)(1) of the Advisers Act [15 U.S.C. § 80b-9(e)(1)].

## JURISDICTION

6. This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)], Sections 21(d)(1) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)(1) and 78aa] and Sections 209(d) and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d) and 80b-14].

## DEFENDANT

7. Purner, age 41, is a resident of Los Angeles, California. From April 1998 through August 2000, Purner was associated with Broker II. From September 2000 through late 2001, Purner was associated with and operated SDAM, an unregistered investment adviser. While working under the name of SDAM, Purner provided investment advice to her clients and received investment advisory fees. Purner held a Series 7 license while she was associated with Broker II but she allowed that license to lapse after she left Broker II. In February 2003, Purner was permanently barred by the National Association of Securities Dealers ("NASD") from associating with any NASD member. On September 29, 2004, Purner pled guilty to three counts of wire fraud in violation of 18 U.S.C. § 1343 before the United States District Court for the Southern District of California, in United States v. Wendy Feldman, Crim. Information No. CR-04-2520-BTN (S.D. Cal.).

## FACTS

### A. Investors A

8. In early 1998, while she was associated with another brokerage firm ("Broker I"), Purner began to act as a registered representative for a group of customers who were related by blood or marriage ("Investors A"). At that time, Purner convinced Investors A to transfer their

brokerage accounts to Broker I, placing them under her control. In April 1998, Purner left Broker I and began working at Broker II. She convinced Investors A to transfer certain of their accounts at Broker I to Broker II. In August 2000, Purner left Broker II to start SDAM, taking Investors A's accounts with her.

9. For a three year period, from July 1998 through July 2001, Purner misappropriated approximately $3,500,000 from Investors A provided to her for the purpose of purchasing securities. Purner's fraudulent scheme was unsophisticated. Purner convinced Investors A to give her control over their accounts for the ostensible purpose of managing the accounts and making investments on their behalf. In certain instances, Purner advised Investors A to keep their money in off-book investments. Investors A agreed and authorized the transfers to the off-book investments by signing letters of authorization for such transfers -- often in blank. Purner did not, however, invest Investor A's money in off-book investments as she said she would. Rather, she simply wired funds from those accounts to other accounts of her choosing, without either the authorization or knowledge of Investors A. Primarily she used the money she siphoned from Investors A's accounts to supplement the account balances of other investors in order to create the appearance of profitable returns.

10. In order to conceal the misappropriation of Investors A's funds while she was employed by Broker II, in addition to the regular monthly statements provided by Broker II, Purner provided Investors A with fictitious accounts statements that purported to show their assets that were being held outside of Broker II. When Investors A became suspicious about activity in their accounts, Purner transferred money that she had misappropriated from other customer accounts or borrowed from her parents to Investors A's accounts in order to temporarily give the

appearance that Investors A's accounts held the correct amount of assets.

11.     After Purner began working as SDAM, Purner stopped providing account statements to Investors A despite numerous requests for such documentation. In approximately May 2001, Investors A demanded the return of certain funds managed by Purner. Purner purported to repay Investors A with several checks but the checks were subsequently returned because of insufficient funds.

12.     Ultimately, Purner admitted to Investors A that she had misappropriated their money.

**B.     Investor B**

13.     From April 1998 through August 2000, Purner acted as a broker for Investor B. In August 1998, Investor B sold his house and placed the bulk of the proceeds -- $500,000 -- in his account at Broker II to invest on his behalf. Purner gave Investor B what purported to be a receipt for $500,000 from Broker II and a "confirmation" of the deposit from the "wired funds" department of Broker II. These documents purportedly confirmed that Broker II's wired funds department had received the $500,000 and that the proceeds had been invested in a mutual fund and a money market account. In fact, these documents were forged by Purner. Like other documents that Investor B received from Purner, the receipt and confirmation were mailed in a Broker II envelope from one of Broker II's offices. Purner also regularly provided Investor B with fictitious account statements that purported to show assets being held on Investor B's behalf outside of Broker II. Investor B did not know that these documents were false.

14.     By the summer of 2000, the fictitious account statements that Purner provided to Investor B showed that he had over $1 million invested in various stocks, mutual funds, and money market accounts. In August 2000, Purner left Broker II to start SDAM. At that time, Purner

recommended that Investor B transfer his account to another brokerage firm. Based on Purner's advice, Investor B attempted to transfer his account to the recommended firm, but was unable to do so because Purner had misappropriated the entire balance of the account.

## C. Investor C

15. Investor C was a customer and client of Purner's at Broker II and SDAM, respectively. After Purner left Broker II in August 2000, Investor C transferred his brokerage account valued at approximately $110,000 to a brokerage firm recommended by Purner. In or about December 2000, Purner recommended to Investor C that he invest in the securities of Med Diversified, Inc. ("MED"). On December 27, 2000, Investor C wired funds from his brokerage account to Purner's personal banking account for the purpose of purchasing shares of MED stock. Purner did not use Investor C's money to purchase MED shares but instead misappropriated it for her own use.

## D. Investor D

16. Investor D became Purner's customer while she was working at Broker I and he subsequently transferred his brokerage account to Broker II so that Purner could continue to manage it. After Purner left Broker II in August 2000 and at Purner's urging, Investor D transferred his brokerage account to another brokerage firm. Investor D then gave Purner trading authority over his new brokerage account. On October 12, 2000, Purner withdrew $35,000 from Investor D's brokerage account for the purported purpose of buying stock for Investor D. Before making this withdrawal, Purner told Investor D that she would use money withdrawn from his account to purchase stock. Purner did not, however, purchase stock for Investor D. Rather, Purner

misappropriated the money for her own use. Specifically, Purner wired the $35,000 to a bank account of Changes Medispa, a business in which she had an ownership interest.

17. After becoming a client of SDAM, Investor D began questioning Purner about his investments. Purner then made false oral representations to him about how she had purportedly invested his funds. These representations were inconsistent with activity reflected on account statements that he received from the brokerage firm that held his account. When Investor D questioned Purner about the disposition of his funds, she placated him and reassured him that all was well. However, Investor D ultimately told Purner that he wanted her to return his money. Purner then sent him a check that purported to be a refund of his investment. This check, however, was returned for insufficient funds.

### FIRST CLAIM FOR RELIEF
### FRAUD IN THE OFFER OR SALE OF SECURITIES
### Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]

18. Paragraphs 1 through 17 above are realleged and incorporated herein by reference.

19. As more fully described above, from 1998 through 2001, Purner knowingly or recklessly made numerous materially false and misleading statements to her customers and clients regarding the nature and value of their investments, including providing fictitious account statements. Purner also misappropriated, for her own benefit, money provided to her by customers and clients for the purpose of purchasing securities.

20. By reason of the foregoing, Purner violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### SECOND CLAIM FOR RELIEF
### FRAUD IN CONNECTION WITH THE
### PURCHASE OR SALE OF SECURITIES
**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]
and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

21. Paragraphs 1 through 20 above are realleged and incorporated by reference herein.

22. As more fully described above, from 1998 through 2001, Purner knowingly or recklessly made numerous materially false and misleading statements to her customers and clients regarding the nature and value of their investments, including providing fictitious account statements. Purner also misappropriated, for her own benefit, money provided to her by customers and clients for the purpose of purchasing securities.

23. By reason of the foregoing, Purner violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R § 240.10b-5].

### THIRD CLAIM FOR RELIEF
### FRAUD UPON CLIENTS OF AN INVESTMENT ADVISER
**Violations of Sections 206(1) and 206(2) of the Advisers
Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)]**

24. Paragraphs 1 through 23 above are realleged and incorporated by reference herein.

25. As more fully described above, from 2000 through 2001, Purner made numerous materially false and misleading statements to her investment advisory clients at SDAM regarding the nature and value of their investments. Purner also misappropriated, for her own benefit, money provided to her by investment advisory clients for investment.

26. By reason of the foregoing, Purner violated Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

a) permanently enjoin Purner from violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)];

b) permanently enjoin Purner from violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

c) permanently enjoin Purner from violating Sections 206(1) and (2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)];

d) order Purner to disgorge all ill-gotten gains from the conduct alleged herein in the amount of $4,145,000, together with prejudgment interest;

e) order Purner to pay civil penalties pursuant to Section 20(d)(1) of the Securities Act, Section 21(d)(3) of the Exchange Act, and 209(e)(1) of the Advisers Act; and

f) grant such other relief as the Court deems appropriate.

Dated: June 23, 2006
Washington, D.C.

Respectfully submitted,

_____
Dean M. Conway (DC Bar #457433)
Assistant Chief Litigation Counsel
Securities and Exchange Commission
100 F. Street, N.E.
Washington, D.C. 20549-4010
Tel.: (202) 551-4412
Fax: (202) 772-9246
E-mail: conwayd@sec.gov

OF COUNSEL:

Richard W. Grime
Christine E. Neal
Uta von Eckartsberg